UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BEN QUARTEY,

          Plaintiff,

- against -

SCHIAVONE CONSTRUCTION CO. LLC, et al.,

          Defendants.
-----------------------------------------------------------X

**ORDER**

11 CV 2037 (DLI)

On April 26, 2011, plaintiff Ben Quartey ("Quartey") brought this action against defendants Schiavone Construction Co. LLC, Schiavone Contracting Corp (collectively, "Schiavone"), John P. Picone, Inc. ("Picone") (collectively, "defendants"), WDF Development LLC, and WDF Inc.[1] Plaintiff's Complaint alleges that defendants terminated Mr. Quartey from his job as a driller and explosives blaster because of his race, in violation of 42 U.S.C. § 1981 and Article 8 of the New York City Administrative Code.

Currently before the Court is plaintiff's January 26, 2013 motion to compel production of discovery ("Mot."). Plaintiff also requests that the Court award plaintiff the costs, including attorneys' fees, of bringing this motion. (Mot. at 3).

---

[1] Plaintiff's claims against defendants WDF Development LLC and WDF Inc. were voluntarily dismissed as of July 29, 2011.

1

## BACKGROUND

Plaintiff's Complaint alleges that Mr. Quartey was born in Sub-Saharan Africa and that he is black. (Compl.[2] ¶ 5). Plaintiff claims that defendants engaged in a joint venture to perform construction work at the Capital Project WM-11 ("the project"), located at the Croton Water Treatment Plant in the Bronx. (Id. ¶ 16). The project involved both a drilling phase and a subsequent blasting phase. (Id. ¶ 21). According to plaintiff, in January 2010, defendants hired Mr. Quartey to work as a driller and blaster on both phases of the project.[3] (Id. ¶ 17). Plaintiff contends that he was qualified to work as a driller and blaster, and his work performance met or exceeded the reasonable expectations of defendants. (Id. ¶ 18). Plaintiff claims that he worked at the project as a foreman in charge of a crew of about five employees from approximately January 19, 2010 until March 14, 2010. (Id. ¶¶ 19-20). Plaintiff's Complaint alleges that, on March 14, 2010, after the drilling phase of the project was complete and before the blasting phase began, defendants terminated him and all of the black members of his crew. (Id. ¶ 21). According to plaintiff, defendants replaced the terminated employees with Italian American workers, and at least one of the Italian American workers from the original crew remained on the project. (Id. ¶ 22). In short, plaintiff alleges that defendants "sought to get rid of the Black workers once the difficult part of the project was complete, so that the more desirable job. . . could be taken over by the Italian American employees." (Id. ¶ 23).

---

[2] Citations to "Compl." refer to plaintiff's Complaint, filed April 26, 2011.

[3] Defendants contend that plaintiff was hired for only the drilling phase of the project. (Defendants' letter requesting leave to file a motion for summary judgment, dated January 18, 2013 ("1/18 Let.") at 2).

## DISCUSSION

I. <u>Arguments</u>

In the instant motion, plaintiff explains that he was replaced by a blaster named Jorge Barahona, a White or Hispanic man. (Mot. at 1). According to plaintiff, "[d]efendants claim that Barahona was chosen over plaintiff because plaintiff performed poorly at a project called 'South Ferry' where he had been employed by defendant Schiavone in 2005." (<u>Id.</u>) Specifically, Fred Streichenwein ("Streichenwein"), a "Schiavone employee and resident 'blasting guru'" (1/18 Let. at 2), testified that he recommended that defendants not use plaintiff as a blaster because of his poor work at the South Ferry Project. (Mot. at 2). Following the deposition of Mr. Streichenwein, plaintiff sought additional information relating to the South Ferry Project incident. A conference was held before the undersigned on November 16, 2012, at which the Court directed plaintiff to submit these additional document requests by November 30, 2012 and directed defendant to respond by January 7, 2013.

Plaintiff claims that defendants' responses were served after the Court-Ordered deadline; the responses were dated January 16, 2013 and received by plaintiff on January 22, 2013. (<u>Id.</u> at 2). Prior to plaintiff's receipt of the discovery responses, defendants submitted a letter, dated January 18, 2013, requesting leave to file a motion for summary judgment before the Honorable Dora L. Irizarry. In the pre-motion conference letter, defendants explain that Streichenwein had suggested that defendants hire Barahona instead of Mr. Quartey for the blasting job based on his prior experiences with both men. (1/18 Let. at 2). Plaintiff argues that defendants' claim is pretextual because Barahona, who was also employed at South Ferry, "destroyed a concrete breaking machine with his blasting" while working at the South Ferry site. (Mot. at 1).

3

Plaintiff seeks information and documents about his own work performance and the work performance of Barahona at the South Ferry Project, as well as information about other blasters who worked at South Ferry. Plaintiff complains that defendants have refused to produce any discovery in response to his requests. (Id.) Specifically, defendants have objected to plaintiff's requests on the basis that the requests are "overbroad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence, and outside the scope of the discussion held before Magistrate Judge Pollak during the November 16, 2012 Court conference."[4] (Id. at 2). Despite the fact that defendants are alleged to be partners to the joint venture that terminated Mr. Quartey, defendants object to his discovery requests on the basis that "this case arises out of [plaintiff's] claims with regard to his employment with a Joint Venture, and not with either of the individual defendants." (Id. at 3). Defendant Picone also objects to many of plaintiff's requests on the basis that "it never employed Plaintiff and did not employ him on the 'South Ferry Project.'" (Id.) Plaintiff contends that his discovery requests are clearly relevant and that defendants' objections are frivolous. (Id. at 2).

In response, defendants contend that plaintiff's discovery requests are irrelevant to the topics discussed at the Court's November 16, 2012 conference. (Resp.[5] at 1-2). According to

---

[4] To the extent that defendants complain that plaintiff's requests are irrelevant to the topics discussed at the November 16, 2012 conference, it appears that Interrogatory 1 and Document Requests 1, 11, and 14 may have been beyond the scope of what was initially contemplated. However, while the focus of the conference may have been on documents related to plaintiff's performance at the South Ferry Project and the claim that Mr. Barahona also caused accidents at the South Ferry Project, by failing to timely object, defendants have waived their objections. Upon review, the Court finds that, in any event, these requests may lead to the discovery of admissible evidence.

[5] Citations to "Resp." refer to defendants' response to plaintiff's motion to compel, filed February 4, 2013.

4

defendants, "documents concerning any blaster other than Plaintiff simply are irrelevant and will not lead to discovery of admissible evidence." (Id. at 3). Defendants also claim that plaintiff's requests for documents concerning his own work performance at South Ferry are overbroad and unduly burdensome. (Id.) Defendants argue that Streichenwein's deposition testimony should suffice, because he is the only individual who possesses "relevant information regarding the South Ferry incident." (Id.)

Defendants take issue with plaintiff's accusation that their discovery responses were served late, claiming that defendants "advised Plaintiff's counsel, in writing, [that] they would need additional time to respond to the demands because [defendants' counsel] was on trial." (Id. at 2). Defendants also complain that plaintiff's case lacks merit, as evidenced by his "campaign of altering the theory of his case when the need suits him." (Id. at 1). Specifically, defendants claim that plaintiff has made inconsistent statements about the skin color of Barahona and other workers. (Id.) Defendants characterize plaintiff's current discovery requests as a "fishing expedition." (Id.)

II. Analysis

A. Motion to Compel

It is clear that defendants served their responses to plaintiff's discovery requests at least nine days late. The Court directed defendants to respond to plaintiff's requests by January 7, 2013, but defendants' responses are dated January 16, 2013 and they were received by plaintiff on January 22, 2013. Although defendants claim that they "advised Plaintiff's counsel, in writing, [that] they would need additional time to respond to the demands because [defendants'

counsel] was on trial" (id. at 2), they failed to request an extension of the deadline from this Court. Moreover, neither plaintiff nor the Court agreed to the requested extension of time.

Defendants may not unilaterally decide to adjourn a Court-Ordered deadline, especially where, as here, defendants have simply filed boilerplate objections to all of plaintiff's requests, undermining any claim that additional time was necessary. "A failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." See Cohalan v. Genie Indus., Inc., 276 F.R.D. 161, 163 (S.D.N.Y. 2011); Labarbera v. Absolute Trucking, Inc., No. 08 CV 4581, 2009 WL 2496463, *1-2 (E.D.N.Y. Aug. 12, 2009) (finding that by missing the response deadline and failing to show good cause for not responding to the interrogatories, defendant had waived its rights to object to plaintiffs' discovery requests). Since defendants served their discovery responses late and they have not shown good cause for failing to respond on time, an Order precluding defendants from objecting to plaintiff's discovery requests is warranted on this basis alone.

Even if defendants were permitted to object, the Court finds their objections to be without merit. Plaintiff's discovery requests are clearly relevant to the adjudication of his claims. Indeed, plaintiff seeks information that could lead to evidence contradicting arguments that defendants intend to make in their motion for summary judgment. In their January 18, 2013 letter to Judge Irizarry seeking leave to file a motion for summary judgment, defendants wrote that they had

> sought the input of Fred Streichenwein. . .regarding who to hire to perform sensitive blasting work. . . . Mr. Streichenwein suggested Jorge Barahona, Sr. (Hispanic). . .with whom Mr. Streichenwein had had prior positive experiences. To the extent that Plaintiff was discussed as a candidate for the blasting, Mr. Streichenwein

6

> expressed concern due to a negative experience he had with Plaintiff on a former job site. Specifically, while performing blasting work at a Shiavone South Ferry job site, Plaintiff destroyed a temporary sewer line, threw rock powder onto live subway tracks, and had poor productivity.

(1/18 Let. at 2). Plaintiff's discovery requests seek information about his own performance at the South Ferry Project, which defendants cite as a justification for plaintiff's termination. He also seeks information about other blasters at the South Ferry Project, who could potentially serve as witnesses for the plaintiff. Specifically, plaintiff seeks, <u>inter alia</u>: the names of those who witnessed the blast performed by plaintiff that allegedly wiped out the temporary sewer; reports of damages from the blasting work at the South Ferry Project; documents, photographs, and recordings substantiating Streinchenwein's claim that a blast performed by plaintiff caused damage to a sewer line; and documents demonstrating that plaintiff's work performance at the South Ferry Project was satisfactory or unsatisfactory.

Plaintiff also seeks evidence to challenge the credibility of Streichenwein's testimony by demonstrating that the person he recommended, Mr. Barahona, had an equally poor performance record. In this regard, he seeks documents relating to the blasting work performed by Jorge Barahona, Sr. at the South Ferry Project; documents demonstrating that Barahona's work performance was satisfactory or unsatisfactory; and documents relating to the measurement or evaluation of blasters' job performance on the South Ferry Project. Defendants have failed to show how their blanket opposition to any of these requests on the basis of relevance is justified.

To the extent that defendant Picone objects to plaintiff's discovery requests because it did not employ plaintiff at the South Ferry Project, this objection is not valid. If Picone does not possess any documents responsive to plaintiff's demands, it should say so. Similarly,

7

defendants' objection that they employed plaintiff as part of a joint venture but not as individual companies does not excuse them from responding to plaintiff's discovery requests. Defendants' argument that plaintiff should be satisfied with the testimony of Mr. Streichenwein is also unpersuasive. At the November 16, 2012 conference, the Court permitted further discovery on the issues raised in Streichenwein's testimony; by doing so, the Court has already implicitly rejected defendants' contention. Further, defendants' contentions about the merits of plaintiff's claims should be proffered in the context of their summary judgment motion rather than in response to plaintiff's discovery motion.

B. Sanctions

With respect to plaintiff's request for sanctions in the form of attorneys' fees and costs, the Court finds that such sanctions are appropriate.

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (citing Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999). "For less severe sanctions, such as fines and cost-shifting, the Court's inquiry focuses mainly on the misconduct of the responding party; for more severe sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence." Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). In deciding what the appropriate sanction in a matter is, the court should consider "'the prophylactic, punitive[,] and remedial rationales' of discovery sanctions." Id. at *10 (quoting Passlogix, Inc. v. 2FA Tech.,

LLC, 2FA, Inc., No. 08 CV 10986, 2010 WL 1702216, at *37 (S.D.N.Y. Apr. 27, 2010) (discussing discovery sanctions in the context of spoilation of evidence)).

Rule 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery," the Court's response may include any of the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders"). Given that "compliance with discovery orders. . .is necessary to the integrity of our judicial process. . .part[ies] who flout[] such orders do so at [their] peril." Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988).

Here, defendants failed to comply with a Court-Ordered deadline to respond to plaintiff's discovery requests, and their late-served responses failed to respond to even one of plaintiff's

9

requests. In addition, their failure to submit a timely and appropriate response forced plaintiff to respond to defendants' prematurely filed request for a pre-motion conference, which the District Court denied based on the outstanding discovery dispute. The Court's findings support the imposition of the mild sanction of cost-shifting, which is required by the Federal Rules where noncompliance is not substantially justified and the award of expenses is not otherwise unjust. Accordingly, plaintiff is directed to submit time sheets and billing records setting out the costs incurred and the time spent on this motion and his response to defendants' motion for a pre-motion conference before Judge Irizarry. The Court will review the records to make a final determination of the amounts owed.

## CONCLUSION

For the reasons stated herein, plaintiff's motion is granted in its entirety. Defendants' objections to plaintiff's discovery requests have been waived, and defendants are Ordered to provide all responsive documents by **February 20, 2013**. The Court also Orders defendants to pay plaintiff's attorneys' fees and costs associated with this motion and with plaintiff's response to defendants' motion for a pre-motion conference. Plaintiff is directed to submit time sheets and billing records setting out the costs incurred and the time spent.

**SO ORDERED.**
Dated: Brooklyn, New York
February 6, 2013

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York