```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BEN QUARTEY,                                              :
                                                          :
                          Plaintiff                       :
                                                          :
            -against-                                     :       **MEMORANDUM AND ORDER**
                                                          :       11-CV-2037 (DLI)(CLP)
SCHIAVONE CONSTRUCTION CO. LLC,                           :
SCHIAVONE CONTRACTING CORP, and                           :
JOHN P. PICONE, INC.,                                     :
                                                          :
                          Defendants.                     :
----------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Ben Quartey ("Plaintiff" or "Quartey") brought this action against Schiavone Construction Co. LLC, Schiavone Contracting Corp (together "Schiavone"), and John P. Picone, Inc. ("Picone," together with Schiavone, "Defendants"), alleging employment discrimination on the basis of race in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York City Human Rights Law ("NYCHRL"). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes. For the reasons set forth below, Defendants' motion is denied in its entirety.

## BACKGROUND

Plaintiff, a black male who was born in Ghana, is a member of Drill Runners and Blasters Union Local 29 of the Laborers International Union of America ("Local 29" or the "Union"). (Defs.' Statement of Uncontested Facts ("Defs.' 56.1 Stmnt") ¶¶ 3, 8, Doc. Entry No. 60-3; Pl.'s Rule 56.1 Counter-Statement of Material Facts ("Pl.'s 56.1 Stmnt") ¶¶ 3, 8, Doc. Entry No. 51.) Defendants are heavy construction companies that formed a joint venture (the "Joint Venture")

for the purpose of performing a public construction project at the Croton water treatment plant (the "Croton Project").[1] (Defs.' 56.1 Stmnt ¶¶ 1-2, 4; Pl.'s 56.1 Stmnt ¶¶ 1-2, 4).

In early 2010, Plaintiff visited the Croton Project site several times in an attempt to find work, a process known as "shaping" a job. (Defs.' 56.1 Stmnt ¶¶ 9, 11; Pl.'s 56.1 Stmnt ¶¶ 9, 11.) While shaping the Croton Project, Plaintiff spoke with the Joint Venture's Project Superintendent, Adriano Mele ("Mele"), who was responsible for, *inter alia*, managing the unionized labor force. (Defs.' 56.1 Stmnt ¶¶ 6, 10; Pl.'s 56.1 Stmnt ¶¶ 6, 10.) Mr. Mele told Plaintiff that the Joint Venture needed Local 29 members to perform drilling and blasting on the Croton Project. (Defs.' 56.1 Stmnt ¶ 10; Pl.'s 56.1 Stmnt ¶ 10.)

In January 2010, Plaintiff was hired by the Joint Venture to work on the Croton Project. (Defs.' 56.1 Stmnt ¶ 14; Pl.'s 56.1 Stmnt ¶ 14.) The parties dispute the nature of Plaintiff's employment. Specifically, Defendants contend that Plaintiff was hired as a foreman solely for the drilling phase of the Croton Project, while Plaintiff contends that Mr. Mele told him he was hired for both the drilling and blasting phases of the Project. (Defs.' 56.1 Stmnt ¶¶ 12, 13; Pl.'s 56.1 Stmnt ¶¶ 12, 13, 79.) The parties also dispute whether Mr. Mele and Joseph Ascolese ("Ascolese"), the Joint Venture's Project Manager, were aware of Plaintiff's qualifications, other than the fact that he was a Local 29 member, when he was hired. (Defs.' 56.1 Stmnt ¶¶ 5, 15-16; Pl.'s 56.1 Stmnt ¶¶ 5, 15-16.)

Mr. Mele asked Plaintiff to put together a crew of drillers to work under him. (Defs.' 56.1 Stmnt ¶ 17; Pl.'s 56.1 Stmnt ¶ 17.) On Plaintiff's recommendation, the Joint Venture hired Isaac Weaver and David Gyan, who are both Black. (Defs.' 56.1 Stmnt ¶ 19; Pl.'s 56.1 Stmnt ¶

---

[1] Defendants note that Plaintiff was employed by the Joint Venture rather than the Defendants. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 1, fn. 3, Doc. Entry No. 60-4.) Defendants contend, therefore, that Plaintiff's claims should be dismissed for failure to sue his actual employer. (*Id.*) The Court finds that it would be inequitable to dismiss Plaintiff's claims on this basis at this stage of the litigation.

19.) Local 29 sent Joseph Russo ("Russo"), who is Caucasian, to join Plaintiff's crew as the shop steward. (Defs.' 56.1 Stmnt ¶¶ 20-21; Pl.'s 56.1 Stmnt ¶¶ 20-21.) The Joint Venture also hired Francis Hanson, who is Caucasian, and Carl Stinnie, who is Black, as members of Plaintiff's crew. (Defs.' 56.1 Stmnt ¶¶ 22-23; Pl.'s 56.1 Stmnt ¶¶ 22-23.) Plaintiff and his crew performed line and channel drilling for the Croton Project. (Defs.' 56.1 Stmnt ¶ 24; Pl.'s 56.1 Stmnt ¶ 24.)

On or about March 14, 2010, Plaintiff and his crew were laid off. (Defs.' 56.1 Stmnt ¶ 25; Pl.'s 56.1 Stmnt ¶ 25.) Defendants claim that the drilling phase of the Croton Project was over when Plaintiff was laid off, but Plaintiff contends that the drilling work was not completed entirely. (Defs.' 56.1 Stmnt ¶ 25; Pl.'s 56.1 Stmnt ¶ 25.) Additionally, since the parties disagree about whether Plaintiff was hired to perform blasting in addition to drilling, there is a dispute as to whether Plaintiff actively was terminated or whether his employment simply ended once the tasks he was hired to perform were complete. (*See* Pl.'s 56.2 Stmnt ¶¶ 12, 13, 25, 26.)

After Plaintiff and his crew were laid off, the Joint Venture hired Jorge Barahona, Sr. ("Barahona"), who is not black, and his crew to perform blasting for the Croton Project. (Defs.' 56.1 Stmnt ¶¶ 27, 28, 48, 50; Pl.'s 56.1 Stmnt ¶¶ 27, 28, 48, 50.) In addition to the crew members recommended by Mr. Barahona, Mr. Russo was assigned by Local 29 to be the shop steward on the blasting crew. (Defs.' 56.1 Stmnt ¶ 49; Pl.'s 56.1 Stmnt ¶ 49.) According to Defendants, Mr. Barahona was hired based on the advice of Fred Streichenwein, a drill blast superintendent for Schiavone with significant blasting experience. (Defs.' 56.1 Stmnt ¶ 29, 30; Pl.'s 56.1 Stmnt ¶ 29, 30.) Notably, Mr. Streichenwein had worked with both Mr. Quartey and Mr. Barahona on a prior Schiavone construction job (the "South Ferry Project"). (Defs.' 56.1 Stmnt ¶¶ 36-39, 45; Pl.'s 56.1 Stmnt ¶¶ 36-39, 45, 89.) The parties dispute the circumstances

surrounding the Joint Venture's decision to hire Mr. Barahona and Mr. Streichenwein's motives for recommending that Mr. Barahona, rather than Mr. Quartey, perform the blasting phase of the Croton Project. (Defs.' 56.1 Stmnt ¶¶ 28, 30, 33-47; Pl.'s 56.1 Stmnt ¶¶ 28, 30, 33-47.)

On April 26, 2011, Plaintiff commenced the instant action, alleging that the Defendants discriminated against him on the basis of race by terminating him from his employment on the Croton Project.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S.

at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

**II.     Section 1981 Claim**

A. *Legal Standard*

Employment discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013).

Under the three-part *McDonnell* framework, "a plaintiff must first establish a *prima facie* case of discrimination." *Id.* (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n. 3, (2003)); *McPherson v. New York City Dept. of Educ.*, 457 F. 3d 211, 215 (2d Cir. 2006). To do so, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010)). "If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the employer satisfies his burden, the burden shifts back to the plaintiff to demonstrate that race was the real reason for the employer's adverse action. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Although "[t]he Second Circuit has stated that district courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," summary judgment in such a case may still be warranted if the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. New York Health and Hospitals Corp.*, 500 F. Supp. 2d 224, 227-28 (S.D.N.Y. 2007) (internal citations and quotation marks omitted); *see also Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 528 (E.D.N.Y. 2005) ("[T]o rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary

judgment, a plaintiff must present more than allegations that are conclusory and unsupported by evidence of any weight.") (citation and internal quotation marks omitted).

B. *Analysis*

1. *Prima Facia* Case

Plaintiff contends that Defendants discriminated against him on account of his race by terminating him from his job on the Croton Project. As noted above, to fulfill his burden to establish a *prima facie* case, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Reynolds v. Barrett*, 685 F.3d at 202. The requirements at this stage of the analysis are "'minimal,' and a plaintiff's burden is therefore 'not onerous.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012). Defendants concede, for the purposes of this motion, that Plaintiff is a member of a protected class and that he suffered an adverse employment action.[2] (Defs.' Mem. at 6, fn. 4.) Thus, the Court must determine whether Plaintiff has demonstrated that he was qualified to work on the blasting phase of the Croton Project and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

"[T]he qualification necessary to shift the burden to [the] defendant[s] for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). Here, it is clear that Plaintiff had at least "minimal qualification[s]" for the blasting job. *See id.* It is undisputed that Plaintiff was a Local 29 member. (Defs.'s 56.1 Stmnt

---

[2] As noted above, although Defendants concede that Plaintiff suffered an adverse employment action, the parties dispute whether Defendants terminated Plaintiff from his job on the Croton Project, or whether the adverse action is more accurately classified as a decision not to hire Plaintiff for the blasting phase of the project.

7

¶ 10; Pl.'s 56.1 Stmnt ¶ 10.) Plaintiff was licensed as a blaster and previously had worked as a blaster for Schiavone. (Defs.' 56.1 Stmnt ¶ 39, 41; Pl.'s 56.1 Stment ¶ 39, 41.) It also is undisputed that Plaintiff had worked as the "blasting super" on a job prior to being hired by the Joint Venture. (Defs.' 56.1 Stmnt ¶ 78; Pl.'s 56.1 Stmnt ¶ 78.) Although Defendants argue that Plaintiff "cannot establish that he was more, or even equally qualified as Mr. Barahona" (Defs.' Mem. at 8), such a showing is not required at the *prima facie* stage. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d at 92 (finding that "the qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision.") Accordingly, Plaintiff has met his minimal burden of establishing that he had the basic qualifications to fulfill the blasting position.

Plaintiff's burden to show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination is similarly "minimal" at this initial stage. *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). "[T]he mere fact that plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *see also Gladwin v. Pozzi*, 403 F. App'x 603, 606 (2d Cir. 2010) (summary order) (finding that the plaintiff, a black woman, had established the fourth prong of a *prima facie* discrimination case where she was replaced by a white male). Here, Plaintiff, a black male, was replaced by Mr. Barahona, who is not black. Under the circumstances of this case, and drawing all inferences in the light most favorable to the Plaintiff, Plaintiff has satisfied his minimal burden of showing that his termination from the Croton Project occurred under circumstances giving rise to an inference

of discrimination. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (finding that, "[b]ecause an employer who discriminates is unlikely to leave a "smoking gun" attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence.")

Accordingly, Plaintiff has fulfilled his burden of establishing a *prima facie* case of intentional race discrimination, and the burden now shifts to Defendants to come forward with a legitimate, nondiscriminatory reason for the adverse employment action.

### 2. *Nondiscriminatory Reason*

Defendants contend that Plaintiff was not hired for the blasting phase of the Croton Project because the Joint Venture "decided to hire someone else who . . . was more qualified to perform the job," based on the advice of Schiavone's drill blast superintendent, Mr. Streichenwein. (Defs.' Mem. at 8-9.) Defendants' primary evidence in support of this contention is the deposition testimony of Mr. Streichenwein ("Streichenwein Dep.," Doc. Entry No. 60-2.)

Mr. Streichenwein testified that Benjamin Bateman ("Bateman"), an employee of the Joint Venture, invited him to visit the job site during the drilling phase of the Croton Project. (Streichenwein Dep. at 15; Defs.' 56.1 Stmnt ¶ 7; Pl's 56.1 Stmnt ¶ 7.) While Mr. Bateman and Mr. Streichenwein were touring the job site, Mr. Quartey approached Mr. Streichenwein and stated that he was going to be working on the blasting phase of the Project. (*Id.* at 18-19.) After his conversation with Mr. Quartey, Mr. Streichenwein told Mr. Bateman and Mr. Ascolese that he did not think it would be "prudent" to use Mr. Quartey as the blaster on the Croton Project. (*Id.* at 19, 36.) Mr. Streichenwein testified that, in his opinion, Mr. Quartey did not have "the

experience to blast in a crucial area that the job was in."[3] (*Id.* at 20.) Specifically, Mr. Streichenwein cited Plaintiff's performance on the South Ferry Project. (*Id.* at 21.) According to Mr. Streichenwein, while Mr. Quartey was a powder carrier and blaster on the South Ferry Project, Mr. Quartey accidentally "wiped out [a] temporary sewer" (*id.* at 21-23); accidentally "threw rock powder" onto live subway tracks (*id.* at 31); and had low productivity. (*Id.* at 31-32.) As documentary evidence, Defendants submitted a "Safety Checklist," dated March 31, 2006, which indicates that "train service [was] suspended for [two hours]" after a blast performed by Mr. Quartey. (Mellk Decl., Ex. 8, Doc. Entry No. 60-2.)

Mr. Streichenwein testified that, in contrast, Mr. Barahona did not have any "problems" or "incidents" blasting on the South Ferry Project. (Streichenwein Dep. at 40.) Defendants also presented the Affidavit of Mr. Streichenwein, in which he stated that he worked with Mr. Barahona on several blasting jobs between the South Ferry Project and the Croton Project and that he "never had any reason to question [Mr. Barahona's] blasting capabilities." (Streichenwein Aff. ¶ 7, Doc. Entry No. 62-1.)

Based on Mr. Streichenwein's testimony and the record as a whole, the Court finds that Defendants have met their burden to present a legitimate, nondiscriminatory reason for Mr. Quartey's termination. Accordingly, the burden now shifts back to Mr. Quartey to demonstrate that a reasonable trier of fact could find that Defendants' explanation is pretext for racial discrimination.

3. *Pretext*

"Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the

---
[3] Mr. Streichenwein testified that the blasting phase of the Croton Project job site was particularly challenging, because "[y]ou had a hundred-year-old reservoir wall, you had the Bronx School of Science across the street, you had a 12-inch high pressure gas main under the sidewalk." (Streichenwein Dep. at 37-38.)

10

evidence comprising the *prima facie case*, without more." *Chambers*, 43 F.3d at 38 (internal citations and quotations omitted). Plaintiff argues that "[Defendants'] given legitimate reason is unworthy of credence," and points to a series of supposed "weaknesses, implausibilities, inconsistencies, or contradictions" that support an inference that Defendants "did not act for the asserted non-discriminatory reason[]." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") at 9, Doc. Entry No. 61-6 (citing *Droutman v. New York Blood Ctr., Inc.*, 2005 WL 1796120 (E.D.N.Y. July 27, 2005)).

First, Plaintiff alleges that he was given "false explanations" as to why he was terminated. (*Id.* at 11.) Specifically, Plaintiff testified that Mr. Bateman told him that the Fire Department would not approve him as the lead blaster, and Mr. Mele told him that "there would be no blasting." (Pl.'s 56.1 Stmnt ¶¶ 82-83; Defs.' Counter-Statement to Pl.'s 56.1 Stmnt ("Defs.' Counterstatment") ¶¶ 82-83, Doc. Entry No. 62-2.) A reasonable trier of fact could credit Mr. Quartey's testimony and find that these materially inconsistent explanations serve to undermine Defendants' proffered explanation. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir. 2001) (finding that "a jury issue on the question of pretext may be created when an employer offers inconsistent and varying explanations for its decision to terminate a plaintiff"); *Bryant v. Verizon Commc'ns*, Inc., 550 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)) (finding that "under appropriate circumstances, a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") Although Defendants argue that the probative value of this evidence is limited, because neither Mr. Bateman nor Mr. Mele had final decision-making power with respect to hiring workers for the Croton Project, it is for

the trier of fact to make credibility determinations and decide what weight to assign to the parties' evidence.

Plaintiff also presents evidence undermining Defendants' claim that Mr. Streichenwein believed Plaintiff performed poorly as a blaster on the South Ferry Project. (Pl.'s Mem. at 14.) Specifically, Plaintiff notes that, while the Safety Checklist cited by Defendants indicates that train service was interrupted after one of Plaintiff's blasts, "[n]owhere does this checklist indicate that the shutting down of the train was the result of something [Mr. Quartey] did wrong." (*Id.*) Indeed, the form, which was signed by Mr. Streichenwein, indicates that proper precautions were taken and that the blast was conducted without incident. (*See* Mellk Decl., Ex. 8.) Plaintiff also offers an engineering report, prepared after the same incident and dated April 4, 2006, from which a trier of fact could infer that Plaintiff was not responsible for the break in train service. (O'Neill Decl., Ex. A, Doc. Entry No. 61-1.)

Moreover, Mr. Quartey testified that he "was never criticized by Streichenwein or anybody else about his job performance at the South Ferry Project." (Quartey Decl. ¶¶ 31-35, Doc. Entry 61-5.) This testimony directly contradicts Mr. Streichenwein's testimony, in which he stated that he spoke to Mr. Quartey about incidents at the South Ferry Project and told him he needed to "get [his] act together." (Streichenwein Dep. at 31.) A reasonable trier of fact could credit Plaintiff's testimony and infer that Mr. Streichenwein's testimony is pretextual. Additionally, Plaintiff points out that the record is bereft of documentary evidence of Mr. Barahona's qualifications. (Pl.'s Mem. at 13).

There is also a genuine issue of material fact as to whether Plaintiff was originally hired for the blasting phase of the project. Mr. Quartey testified that he was told he was hired "as drilling foreman and blaster in charge." (Quartey Decl. ¶ 16.) Mr. Ascolese, Mr. Bateman, and

12

Mr. Mele all testified that they did not recall telling Mr. Quartey that he was going to be assigned to the blasting phase of the Croton Project. (Ascolese Dep. at 33-34; Batemen Dep. at 37, 41; Mele Dep. at 22.) In light of this contradictory testimony and the dearth of documentary evidence reflecting on the nature of Plaintiff's employment, it should be left for the jury to decide whether to credit each witness's testimony.

For the foregoing reasons, and based on the record as a whole, the Court finds that Defendants have not met their burden of showing there is no genuine dispute as to any material fact. The evidence presented by the Defendants consists almost entirely of deposition testimony, which presents issues of credibility that are best decided by a jury. The only documentary evidence provided by the Defendants – namely the Safety Checklist – is equivocal at best. Although Plaintiff has not presented direct evidence of discrimination, he has met his burden of demonstrating that a reasonable trier of fact could infer that Defendants' proffered explanation was pretextual. *See Chambers*, 43 F.3d at 37.

In short, the Court finds that a reasonable jury could find that Defendants intentionally discriminated against Mr. Quartey. Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's Section 1981 claim.

## III. NYCHRL Claim

Plaintiff also argues that his race discrimination claims are actionable under the NYCHRL. *See* N.Y.C. Admin. Code §§ 8-107 *et seq.* (providing that it is unlawful "[f]or an employer or an employee or agent thereof, because of the . . . race, creed [or] color . . . of any person, . . . to discriminate against such person . . ."). The NYCHRL "was intended to provide a remedy reaching beyond those provided by the counterpart federal civil rights laws." *Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 13 (2d Cir. 2013) (summary order)

(citing *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 34, 936 N.Y.S.2d 112, 116 (N.Y. App. Div. 2011)); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (finding that the NYCHRL must be given "an independent liberal construction"). In light of the NYCHRL's liberal standard, summary judgment is appropriate "only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). As discussed above, the Court finds that a reasonable trier of fact could find that the Defendants intentionally discriminated against the Plaintiff. Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's NYCHRL claim.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge